```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION
```

ERNEST WASHINGTON,            )
                              )
        Plaintiff             )
                              )           No. 3:13-0113
v.                            )           Judge Campbell/Brown
                              )           **Jury Demand**
CCA, BLAIR LEIBACH,           )
and BOBBY AYLWARD,            )
                              )
        Defendants            )

**TO: THE HONORABLE TODD J. CAMPBELL**

### REPORT AND RECOMMENDATION

Presently pending is a motion by all Defendants for summary judgment (Docket Entry 72). For the reasons stated below, the Magistrate Judge recommends that this motion be GRANTED and this case be DISMISSED with prejudice. Further, the Magistrate Judge recommends that any appeal from the dismissal of this case not be certified as being in good faith.

### BACKGROUND

The Plaintiff Ernest Washington filed his original complaint *in forma pauperis* against Correction Corporation of America (CCA), Warden Blair Leibach (Leibach), and Bobby Aylward (Aylward) in this matter (Docket Entry 1) on February 11, 2013. In Section 4 of the complaint, Plaintiff alleges that on January 25, 2013, he sealed two pieces of mail and placed them in the outgoing mailbox. He states that the mail room supervisor Aylward took the mail from the mail box and opened it up and read it. He alleges that Aylward is a convicted felon and should not be working in the

mail room. He alleges that he filed a grievance about the matter. In Section 5 of the complaint, he alleges that on January 31, 2013, he spoke to Warden Leibach about the matter and complained that Aylward, as a convicted felon, should not be working as a mail room supervisor. He states that Leibach walked off without saying anything to him. Later in his complaint he alleges that Leibach did state that there was an investigation ongoing about the issue, but that Aylward continued to work in the mail room.

The District Judge conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915(A)(a) to determine whether any part of the complaint would go forward. The District Judge found that there was no allegation in the complaint that the letters in question were legal mail and that the complaint seemed to be primarily concerned with the fact that Aylward was a convicted felon working as a mail room supervisor. The District Judge noted that the Plaintiff's complaint indicated that he had filed a grievance on this matter and that the grievance was rejected on the basis that the prison had in place a policy providing that all outgoing correspondence is subject to being read and searched for contraband before being sent to the post office for delivery.

The Plaintiff's claims against Leibach and CCA were based on the fact that Leibach had failed to respond to the Plaintiff's grievance about his outgoing mail having been opened and to assert

2

a claim against Leibach and CCA based on the fact that Aylward was a convicted felon and had no business working in the prison mail room. The District Judge construed the complaint liberally and found that the Plaintiff intended to assert that Aylward's act of opening his outgoing mail violated the Plaintiff's First Amendment rights to free expression and potentially that the prison's policy regarding the screening of outgoing mail is itself unconstitutional, either facially or as applied to him in this case. After reviewing the case law in this area, the District Judge found that prison officials clearly have the authority to inspect and regulate outgoing prison mail concerning, for example, escape plans, plans relating to ongoing criminal violations, coded messages, and contraband (Docket Entry 4 at p. 4). Construing the complaint generously, the District Judge found that the Plaintiff had stated a claim under Section 1983 against Aylward in his individual capacity based on Aylward opening the Plaintiff's outgoing mail, allegedly in the absence of a substantial justification for doing so. The District Judge further found that the complaint could state a claim against CCA and Leibach in their official capacity on the basis that the regulations implemented by the detention facility governing the inspection of outgoing mail was unconstitutional, either factually or as applied (Docket Entry 4, p. 4). The District Judge dismissed any individual claims against Leibach based on his denial of the Plaintiff's grievance.

The District Judge also dismissed any claims based on the allegation that Aylward was working in the mail room as a convicted felon.

The matter was referred to the Magistrate Judge for case management and for a report and recommendation as to any dispositive motion (Docket Entry 5). The Plaintiff was subsequently allowed to amend his complaint to add a title to Aylward and to add a specific claim for damages (Docket Entries 16 and 17).

Subsequently, there was difficulty in maintaining communications with the Plaintiff, and on June 10, 2013 (Docket Entry 42), the Magistrate Judge recommended the matter be dismissed for failure to prosecute and to obey court orders. This report and recommendation was rejected by the District Judge after the Plaintiff finally provided an address where he could be reached (Docket Entry 46).

Following a Rule 16 case management conference, a scheduling order was entered in the matter on July 22, 2013 (Docket Entry 54). The scheduling order provided that all written and deposition discovery would be completed on or before October 21, 2013, and that any Rule 26 expert disclosures would be served by the Plaintiff on or before November 20, 2013. Dispositive motion deadlines were originally set at March 17, 2013.

The Plaintiff was specifically forewarned in this order that dispositive motions must be responded to by the dates stated, unless an extension was granted by the Court and that failure to

4

respond timely could result in the Court taking the facts alleged in the matter as true and granting the relief requested. The Plaintiff was also advised that he could not just rely on his complaint in a response-he had an obligation to show that there were material disputes of fact with citations of the record, affidavits, or other matters of evidence. The Magistrate Judge specifically referred him to Federal Rule of Civil Procedure 56 and Local Rule 56.01.

On January 9, 2014, the Plaintiff requested appointment of counsel, noting that he was having difficulty in preparing his case. The motion for appointment of counsel was denied (Docket Entry 69). In that order the Magistrate Judge noted that discovery was closed as of October 21, 2013, except for expert witnesses, and no one had designated an expert by the due date. Accordingly, in that order the Magistrate Judge reset the dispositive motion deadline to January 31, 2014, and the Plaintiff was given 28 days in which to respond.

The Plaintiff was again specifically warned of what he would need to respond to the motion for summary judgment, and of the need to keep a current address on file. All Defendants filed a motion for summary judgment on January 23, 2014 (Docket Entry 72). In their motion they alleged that the Plaintiff had failed to exhaust his administrative remedies in this matter and that regardless of the exhaustion of administrative remedies the Defendants could show that they met their criteria for opening

5

outgoing nonlegal mail. The motion was supported by a detailed memorandum of law (Docket Entry 73), and a statement of undisputed material facts (Docket Entry 74). The Defendants further filed an affidavit of Aylward setting forth his basis for opening the Plaintiff's outgoing mail (Docket Entry 75), and an affidavit of Audrey Rimmer (Docket Entry 76), setting forth the grievances CCA's records showed that Plaintiff had filed and the disposition of them.

Following the summary judgment motion, the Plaintiff filed a motion to obtain any and all records of the Defendants' criminal and other records (Docket Entry 78). The Plaintiff, at the same time, filed a motion (Docket Entry 79) to extend the time for submission of dispositive motions. Both these motions were denied. The order pointed out that the dispositive motion deadline was set for January 31, 2014, in part because the Plaintiff had requested a speedy trial, and because no experts had been designated by either side. His request for discovery was denied because the Plaintiff showed no valid reason why he had not completed discovery by the deadline of October 21, 2013. The Plaintiff, however, was given additional time until March 10, 2014, to respond to the Defendants' motion for summary judgment. He was again reminded that in responding to the motion for summary judgment, he needed to follow the instructions previously given by the Court (Docket Entry 81). As of the date of this report and recommendation, the

6

Plaintiff has filed no response whatever to the motion for summary judgment.

**LEGAL DISCUSSION**

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Adams v. Rockafellow,* 66 Fed.Appx. 584, 585 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993)). "The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case." *Id. (*citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986); *LaPointe,* 8 F.3d at 378). "The mere existence of a scintilla of evidence to support Plaintiff's position would be insufficient; there must be evidence upon which the jury can reasonably find for the Plaintiff." *Id.* at 585-86 (citing *Anderson,* 477 U.S. at 252).

Although the Plaintiff has failed to respond to the motion for summary judgment, the Magistrate Judge nevertheless reviewed the motion to insure that it has merit. However, since the

7

Plaintiff has provided no response whatever to the Defendants' statement of undisputed material facts, the Magistrate Judge can take them as accurate under Local Rule 56.01(g) as being undisputed for the purpose of summary judgment.

It appears that the Plaintiff filed one request for informal resolution on or about January 25, 2013, regarding his claim that a CCA employee improperly opened his outgoing general correspondence. Following a response by CCA on January 28, 2013, the Plaintiff then filed a formal grievance on or about January 29, 2013, regarding this claim to which a CCA employee responded on February 6, 2013 (Docket Entry 74, statement 2). The Plaintiff failed to complete this grievance proceeding by appealing the decision on his formal grievance to Warden Leibach. (Docket Entry 74, p. 2).

**EXHAUSTION OF GRIEVANCE PROCEDURE**

The affidavit of Audrey Rimmer (Docket Entry 76) further addresses the grievance procedure. Ms. Rimmer, is Chief of the Unit Management Secretary and Informal Grievance Coordinator. She described the policies and procedures covering the grievance system established by CCA and provides a copy of the policy. She states that the grievance procedure at the detention facility where the Plaintiff was held consists of three stages: (1) an inmate must initially file an informal resolution, a department-level supervisor or other appropriate official must respond within 15 days; (2) if the inmate is dissatisfied with the response, the

8

inmate must file a formal grievance within five days and the grievance officer must respond within 15 days; (3) if the inmate is dissatisfied with the response to the formal grievance, the inmate must file a grievance appeal within five days, and the warden must respond to the grievance appeal within 15 days of receipt. The response of the Warden is final and this step will exhaust the available administrative remedies to an inmate. She states that the Plaintiff complied with steps 1 and 2, but there is no record of him appealing the decision on his formal grievance to the Warden through the grievance appeal (Docket Entry 76, par. 5). She points out that Plaintiff filed four informal resolutions in January and February, and a formal grievance on February 6, 2013, regarding the mail room. She states that Plaintiff again failed to complete his grievance appeal (Docket Entry 76, par. 6). Attached to her affidavit are various informal and formal grievances filed by the Plaintiff on a number of subjects. The Magistrate Judge has reviewed them and does not find that the Plaintiff filed an appeal on any relevant grievances to the Warden.

Therefore, the Plaintiff did not complete the grievance procedure as required by 42 U.S.C. § 1997(e)(a). The Prison Litigation Reform Act (PLRA) requires exhaustion of such administrative remedies that are available before filing suit. The exhaustion requirement is mandatory and applies to all inmate lawsuits about prison life. *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Although a plaintiff is not required to satisfy the

9

exhaustion requirement in his complaint, once exhaustion has been raised as an affirmative defense, the burden shifts to the inmate to demonstrate that he has complied with the exhaustion requirements. *Napier v. Laurel County, Ky*, 636 F.3d 218, 225 (6th Cir. 2011). Is this case the Plaintiff has failed to respond to this argument or to the statement of facts. In reviewing the Plaintiff's pleadings, the closest he comes to satisfying the exhaustion requirement is in his verified complaint (Docket Entry 1) he states that on January 31, 2013, he stopped and had a word with Warden Leibach and asked him if he was aware that he had a convicted felon working in the mail room as a supervisor. He states that Leibach advised him that CCA was privately owned. It appears that this conversation dealt with the Plaintiff complaint that a convicted felon cannot be in the mail room. This portion of the complaint has already been dismissed by the District Judge. There is no indication here that he complained directly to Leibach in his conversation about his mail being opened.

A brief meeting and discussion with Leibach about a matter does not constitute the proper appeal under the Prison Grievance System. The Plaintiff has simply made no showing that he properly appealed the dismissal of his formal grievance.

Accordingly, the Magistrate Judge believes that the Defendants are correct that the Plaintiff has failed to exhaust his administrative remedies in this matter and that his case must be DISMISSED with prejudice.

**OPENING OF NONLEGAL MAIL**

Even assuming that the Plaintiff could get by the failure to exhaust the grievance procedure, the Magistrate Judge believes that his case also fails on the merits. The District Judge has already dismissed any claims that having a convicted felon working in the mail room was a violation of any of the Plaintiff's constitutional rights. The issue remaining here is whether the institution can show reasonable basis for opening nonlegal outgoing mail. The affidavit of the Aylward (Docket Entry 75) notes that pursuant to Policy 16.1, CCA employees may inspect all outgoing general correspondence. He states that employees do not read and search all outgoing general correspondence, but they do read and search outgoing general correspondence that is suspicious. The policy defines as suspicious, among other things, any correspondence that has oily stains or discoloration on the envelope or package. He states that on January 25, 2013, while acting as a supervisor, a CCA employee notified him of two pieces of suspicious outgoing general correspondence from the Plaintiff. One piece was addressed to Michelle Fischer and another to Marilyn Reid. The employee identified the correspondence as suspicious because there was a discoloration or stain on the envelope. The mail room employee read the correspondence and determined that the Plaintiff was requesting that Fischer place money in another inmate's account, which is strictly prohibited. Because the correspondence addressed to Reid looked similar to the

correspondence addressed to Fischer and both were placed in the mail on the same day, the mail room employee read the correspondence addressed to Reid and determined that, again, Plaintiff was requesting that she place money into another inmate's account (Docket Entry 75, par. 6-8). He further states that the Plaintiff was aware of the policy prohibiting family members or visitors from placing money in the account of an inmate because previously he had discovered that Plaintiff arranged for a family member or visitor to place money in the account of another inmate and that he had personally told Plaintiff that CCA prohibited this conduct and instructed the Plaintiff that he would be disciplined if he again requested a family member or visitor to place money into the account of another inmate (Docket Entry 75, par. 10).

He states that he did write up a disciplinary report on Plaintiff for this violation, and that the correspondence was sent to the recipients stamped with a warning on the back of the envelope informing them that compliance with the Plaintiff's request could result in discipline or the potential loss of visitation privileges. He states that following his disciplinary report, the disciplinary review board found Plaintiff guilty of conspiracy and failure to follow policy, and the Plaintiff lost visitation privilege for 30 days and was placed on probation for 60 days (Docket Entry 75, par. 10-13).

The Magistrate Judge believes that the Defendants have provided an adequate explanation as to why they singled out a piece

of the Plaintiff's correspondence for examination. The Plaintiff has not disputed the fact that the outgoing envelope addressed to Fischer was discolored or stained. Thus the written policy of CCA authorized opening and inspecting of this mail. There is nothing in the record to suggest the Plaintiff's mailed was singled out for an improper purpose such as race, religion. Once the inspection of the first letter was completed, it was certainly not unreasonable for the mail room employee to check the second letter, which appeared substantially the same and which was placed in the mail room at the same time as the first.

In *Procunier v. Martinez*, 416 U.S. 396 (1974), the Supreme Court held the censorship of inmate correspondence was justified if "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression" *Procunier*, 416 U.S. at 413. "Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular government interest involved." *Procunier*, 416 U.S. at 413.[1] In this case the mail in question is general correspondence and not legal mail. In this case, CCA has a policy to inspect mail

---

[1] Procunier v. Martinez, 416 U.S. 396 (1974), *overruled by* Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) ("*Martinez* [is] limited to regulations concerning **outgoing correspondence**. As we have observed, outgoing correspondence was the central focus of our opinion in *Martinez*. The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.")(emphasis added).

13

with oil or stains on it. Certainly, the presence of a foreign substance on an envelope could raise reasonable suspicion that the envelope contained something improper.

The Sixth Circuit has upheld the United States Bureau of Prisons Regulations that allow the inspection of all incoming and outgoing general correspondence. *Meadows v. Hopkins*, 317 F.2d 206, 208 (6th Cir. 1983). The Sixth Circuit upheld the Bureau of Prisons regulation which authorized the reading of all prisoners' general mail. The Bureau of Prisons could withhold the sending of mail, which contained certain types of material. In the present case, although an employee opened and read the mail, the mail was still sent, albeit with a warning to the recipient that they faced consequences if they complied with the Plaintiff's request.

While the actual withholding of outbound mail or censorship of outbound mail could raise serious constitutional questions, unless justified, the ability of prison officials to read without censoring outgoing mail, appears to be well recognized. *See Altizer v. Deeds*, 191 F.3d 540, 547-548 (4th Cir. 1999); *Fray v. Raisanen*, 2014 U.S.D. LEXIS 16712 *6-*7.

Even if the Plaintiff had properly exhausted his administrative remedies, he cannot establish a constitutional violation based solely on the fact that the prison mail room inspected his outgoing mail.

**RECOMMENDATION**

For the reasons stated above, the Magistrate Judge therefore recommends that the motion for summary judgment be GRANTED and the Plaintiff's complaint be dismissed with prejudice, and that any appeal not be certified as taken in good faith.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 2st day of April, 2014.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge